IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Dr. Naarah Bryant,<br><br>    Plaintiff,<br><br>  v.<br>Stride Inc, and Pam Seiger/Executive Director, in her Official Capacity.,<br>    Defendants. | C/A No.:   2:25-cv-12662-RMG-MHC<br><br><br><br>COMPLAINT<br>**Jury Trial Requested** |

Plaintiff, Naarah Bryant, by and through undersigned counsel, brings this action against Defendant Stride Inc and Pam Seiger/Executive Director, in her Official Capacity. and asserts claims for Race Discrimination in violation of 42 U.S.C. § 1981, Retaliation, based upon the following allegations.

**ADMINISTRATIVE CHARGE**

Plaintiff has exhausted all administrative remedies and prerequisites prior to filing this lawsuit, including timeliness, deferral, and all other jurisdictional requirements necessary for the maintenance of this Action, as described below:

   a. Plaintiff timely filed a Charge with the Equal Employment Opportunity Commission ("EEOC") on January 30, 2025.

   b. Plaintiff <u>received</u> a Notice of Right to Sue from the EEOC on June 24, 2025.

Plaintiff has timely filed this action within (90) days from the date on which she received her Notice of Right to Sue.

1

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1343, as this action involves federal questions under Title VII and 42 U.S.C. §1981.

2. Venue is proper in this District pursuant to 28 U.S.C. §1391(b), as the acts and omissions giving rise to these claims occurred in South Carolina, where Plaintiff was employed and where Defendant, Stride, Inc., maintains substantial business operations, and where Plaintiff's remote location in Charleston, South Carolina.

## PARTIES

3. Plaintiff, Naarah Bryant, is an African American woman and a resident of Moncks Corner, Berkeley County, South Carolina.

4. Defendant, Stride, Inc., is a corporation authorized to do business in South Carolina, with substantial operations and a base of business located in Greenville, South Carolina.

5. Defendant, Pam Seigler/Executive Director is a resident of Summerville, Dorchester County, South Carolina.

## FACTS

6. On or about February 27, 2024, Plaintiff, Naarah Bryant, was employed by Stride and assigned to Carolus Online Academy in the capacity of Academic Administrator of Special Programs. During her tenure, Plaintiff was subjected to undermining conduct by colleagues Chris Webber and Sandi Brueck, which occurred and condoned in the presence of her supervisor, Pam Sieger. In addition, Ms. Sieger repeatedly canceled scheduled meetings with Plaintiff, thereby impeding Plaintiff's ability to carry out her

responsibilities effectively. Further, information that should have been communicated directly by Ms. Sieger was instead relayed to Plaintiff by Ms. Brueck, which undermined Plaintiff's professional role and contributed to a hostile and unprofessional work environment.

7. Beginning in or about March 2024, Plaintiff and her team raised repeated concerns regarding unmanageable workloads, excessive meetings, heightened student testing demands, and the disproportionate burden of drafting Individualized Education Programs ("IEPs"). Despite these ongoing concerns, leadership failed and refused to provide relief or reasonable accommodations. These issues persisted even in the face of parental complaints and clear compliance risks. Plaintiff's immediate supervisor, Pam Sieger, was aware of these concerns yet failed to take appropriate corrective action.

8. On or about March 20, 2024, Defendant, Pam Sieger, characterized Plaintiff as a "servant leader" responsible for the overall performance of her team. At the same time, however, Ms. Sieger undermined Plaintiff's authority by showing favoritism toward colleague Sandi Brueck, with whom Ms. Sieger maintained a close personal relationship. Although Plaintiff retained formal hiring authority, her leadership role and professional authority were materially diminished as a result of this favoritism and bias.

9. From April through May 2024, Plaintiff was required to manage critical staffing and hiring responsibilities without adequate support. During this period, teachers repeatedly reported unmanageable caseloads, many of which had been reassigned more than twenty (20) times without permanent resolution. Despite these repeated warnings, leadership failed to take corrective action, and compliance concerns raised by the Charter School

District went unaddressed. As a direct consequence of these conditions, two members of the special education team resigned.

10. In June 2024, Plaintiff was assigned responsibilities outside the scope of her job description without prior notice or adequate support. On or about June 19, 2024, Defendant, Pam Sieger, publicly announced alleged conflicts between Plaintiff and another colleague, thereby undermining Plaintiff's professional reputation. During this period, Plaintiff was also subjected to inconsistent performance standards and unequal treatment when compared to her similarly situated Caucasian employees.

11. In July and August 2024, Plaintiff was required to work in the Extended School Year ("ESY") program due to inadequate staffing and completed her assigned ESY hours, including evening sessions; however, Defendant, Pam Sieger, informed Plaintiff that she would not be compensated for this work. During this same period, Defendant continued to exclude Plaintiff from critical communications, mismanaged staffing, and allowed vacancies to persist, resulting in special education caseloads growing from approximately 100 students to more than 270 students, placing an unreasonable burden on the team. Defendant further undermined Plaintiff's professional reputation by falsely implying to staff that Plaintiff was dishonest or ineffective. In contrast, Plaintiff's Caucasian counterpart, Chris Webber, was afforded full support and exempted from compliance responsibilities.

12. On or about August 29, 2024, Plaintiff formally reported her concerns to Human Resources and requested an investigation. In her report, Plaintiff documented ongoing mistreatment, discrepancies in promised bonuses, and the additional responsibilities she had assumed without adequate support. Despite her request, no investigation was conducted.

13. Despite acknowledging the severity of understaffing, Defendant Pam Sieger denied Plaintiff previously promised compensation and shifted additional responsibilities onto her without providing necessary resources or support.

14. In September 2024, retaliation against Plaintiff escalated. She was overloaded with high-priority tasks, excluded from meetings, subjected to an "HR ambush" immediately after reporting systemic discrimination, and falsely accused of compliance failures that resulted from directives issued by others.

15. On or about September 27, 2024, Plaintiff was placed on a Performance Improvement Plan ("PIP"), which was issued as a retaliatory measure in response to her prior complaints and reports of discrimination.

16. On or about September 30, 2024, Plaintiff was forced to constructively resign as a direct result of ongoing retaliation, hostile work environment, and unfair treatment imposed by Defendant.

17. As a direct and proximate result of Defendant's conduct, Plaintiff was subjected to ongoing discrimination, retaliation, and a hostile work environment, causing emotional distress, reputational harm, and significant damage to her professional career.

18. Plaintiff also discovered that Defendant knowingly kept students on the active roster who were no longer enrolled in order to continue receiving public funding tied to student enrollment. Plaintiff raised concerns that this practice was not only unethical but also placed the Academy at risk of state and federal compliance violations.

19. Instead of investigating or correcting these violations, leadership ignored Plaintiff's concerns and further targeted her. Caucasian colleagues who were aware of the practice were neither held accountable nor burdened with the responsibility of addressing it. Plaintiff, however,

was scapegoated and blamed for "compliance failures," despite her efforts to bring these violations to light.

## FIRST CAUSE OF ACTION:
42 U.S.C. §1981 *RACE DISCRIMINATION AGAINST DEFENDANT'S STRIDE AND PAM SEIGER, IN HER OFFICIAL CAPACITY*

20. Plaintiff realleges and incorporates all preceding paragraphs.

21. Plaintiff is an African American woman, a member of a protected class under Title VII and 42 U.S.C. §1981.

22. Defendant subjected Plaintiff to discrimination based on her race through differential treatment, diminished authority, and denial of resources and support that were consistently provided to her Caucasian colleagues.

23. Comparator evidence establishes racial bias:

- Plaintiff's Caucasian colleague Chris Webber was excused from compliance obligations, provided administrative support, and shielded from accountability, while Plaintiff was forced to assume excessive workloads and was scapegoated for systemic failures.

- Plaintiff's Caucasian colleague Sandi, who maintained a close personal relationship with supervisor Pam, was given professional opportunities, visible support, and preferential treatment, while Plaintiff's authority was undermined in front of staff and leadership.

- When staffing shortages and compliance issues arose, Plaintiff was held solely responsible, whereas Caucasian counterparts were either excused or received direct assistance.

24. Defendant Pam described Plaintiff as a "servant leader," a term never applied to Plaintiff's Caucasian counterparts, reinforcing racial stereotypes while minimizing Plaintiff's professional role.

25. Defendant's actions included:

- Excluding Plaintiff from leadership meetings while keeping Chris Webber included;
- Allowing Chris Webber to maintain a manageable caseload while Plaintiff's caseload ballooned to more than 270 students;
- Denying Plaintiff a promised bonus while granting Caucasian employees' full compensation;
- Publicly suggesting Plaintiff was dishonest or ineffective while portraying Chris Webber and Sandi as competent and dependable; and
- Holding Plaintiff to stricter standards of accountability than her Caucasian peers.

26. Plaintiff's concerns about improper funding practices including the enrollment of students no longer attending were disregarded by leadership, while Caucasian counterparts were not only shielded from responsibility but also benefited from a culture of favoritism and protection. Plaintiff's insistence on compliance and integrity was treated as a liability because of her race, whereas Caucasian colleagues were rewarded with support and insulation

27. These actions were motivated by race and demonstrate a pattern of disparate treatment against Plaintiff as compared to Caucasian colleagues performing similar or lesser roles.

28. Defendant's discriminatory conduct deprived Plaintiff of the terms, conditions, privileges, and benefits of her employment because of her race.

## SECOND CAUSE OF ACTION:

42 U.S.C. §1981 *RETALIATION AGAINST DEFENDANT'S STRIDE AND PAM SEIGER, IN HER OFFICIAL CAPACITY*

29. Plaintiff realleges and incorporates all preceding paragraphs.

30. Plaintiff engaged in protected activity when she reported ongoing discrimination, unequal treatment, and pay inequities to Human Resources on or about August 29, 2024.

31. Following this complaint, Defendant engaged in direct retaliation by:

- Assigning Plaintiff additional "priority" tasks without resources while shielding Chris Webber from similar demands;

- Excluding Plaintiff from vital leadership communications while continuing to involve Chris Webber and Sandi;

- Conducting an HR "ambush" meeting that humiliated Plaintiff shortly after she reported discrimination;

- Circulating false accusations of compliance failures attributable to leadership directives, not Plaintiff's actions; and

- Issuing Plaintiff a Performance Improvement Plan on September 27, 2024, which was a pretextual and retaliatory measure.

32. Defendant also retaliated against Plaintiff for raising concerns regarding the unlawful practice of retaining unenrolled students on the roster to obtain funding. Plaintiff's reports of these compliance violations were met with hostility, exclusion, and false accusations. Rather than addressing the misconduct, Defendant punished Plaintiff by overburdening her

with additional tasks, excluding her from leadership communications, and ultimately placing her on a retaliatory PIP.

33. In contrast, Caucasian counterparts Chris Webber and Sandi who did not complain of discrimination were insulated from scrutiny, received leadership's full support, and were not subjected to PIPs or other adverse measures despite comparable or greater performance issues.

34. The temporal proximity between Plaintiff's HR complaint and the retaliatory acts demonstrates a clear causal connection between her protected activity and Defendant's adverse actions.

35. Defendant's retaliatory conduct created intolerable working conditions, leaving Plaintiff with no option but to resign on September 30, 2024, amounting to constructive discharge.

36. Defendant acted willfully, maliciously, and in reckless disregard of Plaintiff's rights.

37. As a result, Plaintiff has suffered economic losses, reputational harm, severe emotional distress, and the forced derailment of her career.

## JURY TRIAL REQUESTED

1. Plaintiff requests a jury trial.

## PRAYER FOR RELIEF

2. **WHEREFORE**, Plaintiff prays that this Honorable Court declares that Defendant Stride Inc, and Pam Seiger/Executive Director, in her Official Capacity actions complained of herein violated the rights guaranteed to Plaintiff and issue its judgment:

    a. Declaring the actions complained of herein illegal;

b.  In favor of Plaintiff and against the Individual Defendants for all causes of action herein alleged in an amount which is fair, just, and reasonable, and for actual, compensatory, special, and punitive damages;

c.  In favor of Plaintiff and against the Defendants for all causes of action in an amount which is fair, just and reasonable;

d.  Issuing an injunction enjoining Defendants, their Agents, Employees, Successors, Attorneys and those acting in concert or participation with Defendants, and at their direction from engaging in the unlawful practices set forth herein and any other employment practices shown to be in violation of 42 U.S.C. §1981 , as amended (Race Discrimination/ Retaliation.

e.  Awarding Plaintiff actual and compensatory damages for each Cause of Action contained herein as appropriate, which the jury should find appropriate as a result of Defendants' unlawful discriminatory actions taken as a result of Plaintiff's Race and other pled causes of action, including: physical and mental anguish, pain and suffering, harm to Plaintiff's economic opportunities (present and future), any back pay, front pay and future earnings with cost of living adjustments, prejudgment interest, fringe benefits and retirement benefits;

f.  Awarding Plaintiff her costs and expenses in this action, including reasonable Attorney's fees, and other litigation expenses; and

g.  Granting such other and further relief as may be just and necessary to afford complete relief to the Plaintiff as this Court may deem just and proper.

[SIGNATURE BLOCK ON THE FOLLOWING PAGE]

        Respectfully Submitted,


        By:    s/Donald Gist_____
            Donald Gist
            dtommygist@yahoo.com
            ***GIST LAW FIRM, P.A.***
            4400 North Main Street
            Columbia, South Carolina 29203
            Telephone: (803) 771-8007
            Fax: (803) 771-0063

***September 22, 2025***